# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JIMMY L. COLLINS, JR.,            )
                                    )
          Plaintiff,           )          **Case No. 3:11-cv-00264**
                                      )          **Judge Sharp / Knowles**
v.                                )
                                      )
MORTGAGE ELECTRONIC       )
REGISTRATION SYSTEMS, INC., et al.,   )
                                      )
         Defendants.         )

## REPORT AND RECOMMENDATION

## I.  Introduction and Background

Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Wilson & Associates, PLLC, and Shellie Wallace.  Docket No. 30.  Defendants have contemporaneously filed a supporting Memorandum of Law.  Docket No. 30-1.

Plaintiff has filed a Response to Defendants' Motion to Dismiss.  Docket No. 36.

Plaintiff filed this pro se action alleging the following violations: 18 U.S.C. §1962(c) and (d) (civil RICO), "conspiracy," T.C.A. §32-14-114 (criminal forgery), common law fraud, T.C.A. §39-14-105 (criminal grading of theft offenses), slander of title, quiet title, conspiracy to commit fraud, conspiracy to commit wrongful foreclosure, unjust enrichment, Real Estate Settlement Procedures Act (RESPA), and the "Federal Debt Collection Practices Act" (FDCPA).  Docket No. 1.  Plaintiff sues Mortgage Electric Registration Systems, Inc., MERSCORP,

CitiMortgage, Inc., Wilson and Associates, PLLC, and Shellie Wallace, Trustee.[1]  *Id.*

Essentially, and at the core of the Complaint,  Plaintiff alleges that all Defendants wrongfully

instituted foreclosure proceedings on his home.  *Id.*  Plaintiff seeks declaratory, equitable, and

injunctive relief, as well as compensatory and punitive damages, costs, attorneys fees,[2] and such

additional relief as the Court may deem just and proper.  *Id.*

For the reasons discussed below, the undersigned recommends that Defendants' Motion

to Dismiss be GRANTED.

## II.  Allegations of Plaintiff's Complaint Pertaining to the Instant Defendants[3]

Plaintiff has filed a 73 page Complaint, containing 272 separate paragraphs of allegations

against the Defendants in this case.  As best the Court can tell, the following "facts" are the

allegations against the instant Defendants, in their entirety, as set forth in Plaintiff's Complaint.

The Court notes that many of these "facts" are not material to the issues before it, are not facts

but are instead legal conclusions, are improperly set forth (*i.e.* fraud must be plead with

particularity under Fed. R. Civ. P. 9(b) and Plaintiff fails to do so), and are broad, sweeping

general statements and arguments that may or may not be specific to Plaintiff's mortgage loan.

These "facts" are included herein for background and contextual purposes.

2.  Jimmy Collins was and is still a resident at 2137 ERIN LANE,
MT. JULIET TENNESSEE in Wilson County.  Due to unexpected

---

[1] Wilson and Associates, PLLC, and Shellie Wallace, Trustee are the only Defendants
who are parties to the instant Motion.

[2] Plaintiff is, however, proceeding pro se.

[3] For contextual clarity, the instant Defendants are Defendant Wallace and Defendant
Wilson & Associates, PLLC.  Defendant Wallace is the Substitute Trustee on the Deed of Trust
for Plaintiff's property.  Defendant Wilson & Associates, PLLC, is the law firm which employs
Defendant Wallace.

financial hardships he and his wife encountered, the Plaintiff defaulted on his loan after consistently making payments since July 2008, the time he acquired the loan from Mortgage Investors Group. The loan was then accelerated and Plaintiff was told by the Trustee Shelly[4] Wallace, that he either had to satisfy it by paying the entire $186,843.42 or his home would be sold at a public auction on March 30, 2011, at the Wilson County Courthouse in Lebanon, Tennessee.

. . .

14. In or about the last decade, the Defendant Law Firm Wilson and Associates joined with Defendant Merscorp, Inc., and other conspirators in the fraudulent scheme and RICO enterprise herein complained. The employees of the Defendant Firm, including many licensed attorneys, have become skilled in using the artifice of MERS to sabotage the judicial process to the detriment of borrowers, and, over the past several years, have routinely relied upon MERS to accomplish illegal acts.

15. Wilson and Associates PLLC, is a law firm with its principal place of business in the state of Arkansas, and the firm is one of the regional foreclosure mills, and the regional corporate counsel for CitiMortgage.

16. Shellie Wallace, is a Successor Trustee for MERS.

. . .

23. ... The Trustee does not have the permission of the beneficial owners of the Note to file foreclosure on their behalf.

. . .

30. Certain individuals who were the employees of the law firm executed and notarized forged documents as to the ownership of the loan. They have committed widespread counts of fraud, perjury and forgery in the tens of thousands. These forgers have been referred ton [*sic*] in the press with the vernacular term "robo-signers."

---

[4] Plaintiff sometimes spells Defendant Wallace's first name Shelly and sometimes spells it Shellie. Plaintiff uses both spellings to refer to the same person: Defendant Wallace. The correct spelling is Shellie. Plaintiff's misspelling is, however, immaterial to the issues before the Court.

. . .

34.  Although the Defendants like Shellie Wallace attempting to foreclosure [*sic*] refer to themselves as "Trustees" of a "Trust," the entities are not "Trustees" nor "Trusts" as defined by Tennessee law.  Neither are the entities registered as Business Trusts nor Business Trustees as required by Tennessee law.  In every case, where one of these Mortgage Backed Securities have come to a Tennessee Court, the entity foreclosing lacked capacity to foreclose or to file suit in the State of Tennessee.  There is no "Trust Agreement" in existence.  The entity filing has utilized a Tennessee legal term it has no right to use for the sole purpose of misleading and fooling the Honorable Court.

. . .

36. ... The "Trustee" cannot own the assets of the REMIC.  A REMIC Trustee could never claim it owned a mortgage loan.  Hence, it can never be the owner of a mortgage loan.

37.  Additionally, and important to the issues presented with this particular Complaint, is the fact that in order to keep its tax status and to fund the "Trust" and legally collect money from investors, who bought into the REMIC, the "Trustee" or the more properly named, Custodian of the REMIC, had to have possession of ALL the original blue ink Promissory Notes and original alonges and assignments of the Notes, showing a complete paper Chain of Title.

38.  Most importantly, the "Trustee"/Custodian MUST have the mortgages recorded in the investors name as the beneficiaries of a MBS in the year the MBS closed." [*sic*] Every mortgage in the MBS should have been publicly recorded in Wilson County where the property was located with a mortgage in the name similar to "2008 XYZ REMIC Trust on behalf of the beneficiaries of the 2008 XYZ REMIC Trust."  The mortgages in the referenced example would have had to be publicly recorded in the year 2008.

39.  As previously pointed out, the "Trusts" were never set up or registered as Trusts.  The Promissory Notes were never obtained and the mortgages never [*sic*] obtained or recorded.

40.  The "Trust" engaged in a plethora of "prohibited activities" and sold the inventors certificates and Bonds with phantom

mortgage backed assets. There are now nationwide, numerous Class actions filed by the beneficiaries (the owners/investors) of the "Trusts" against the entities who sold the investments as REMICS based on a Bogus prospectus. ...

41. ... It is therefore NOT in the Trustee's best interest to show the Honorable Court the Note, because they were trying to hide this fraud from the homeowner and they also believe they might actually succeed in hiding the fraud they have committed from the Honorable Court.

42. As applied to the Plaintiff in this Complaint, the end result would be that the required Mortgage-Backed Security asset, or any part thereof (mortgage Note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan. Neither the "Trust" nor Citimortgage would have standing or be a real party in interest. They will never be the proper party to appear before the Courts. Also neither the "Trust" nor the Servicer would ever be entitled to bring a foreclosure or declaratory action. ...

. . .

60. ... The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the shareholder/investors. ...

61. ... The "Trustees" were Custodians, akin to administrators.

. . .

65. A review of the foreclosures filed by the Servicers and "Trusts" typically states that the "Trustee" is the "Holder" of the homeowner's Note. The Complaint in foreclosures never states that the "Trustee" is the OWNER of the homeowner's Note.

. . .

70. Most importantly for Tennessee non-judicial foreclosures or Declaratory actions, the investors or beneficiaries did not have contracts with the Trusts, Servicers, or Trustees to act on their

behalf in a suit in foreclosure or foreclosure sales or otherwise.

71.  In order to collect on the mortgage loans and divest Americans of their homes, Servicers and "Trustees" have had to mislead the Courts as to their standing in foreclosure.  They have had to create, forge and fabricate phony documents in order to obtain an Order of Sale in Foreclosure, and in non-judicial states they have filed fake and forged standing to sell the homes.  All the homeowners in Tennessee whose homes have been foreclosed and sold at the steps of court houses have no idea that those Trustees and Servicers were simply "Pretend-Lenders" with no standing to make them homeless using illegal and fraudulent schemes.

72.  Because of the fraud committed in these illegal foreclosure sales, by banks like Citimortgage and Regional Foreclosure Millls like Wilson and Associates, thousands of homeowners have gone from sleeping in a warm bed to being out in the cold streets.

73.  In a foreclosure, the MBS/Trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from the originator.  The multiple transfers of title of the mortgage loan in between the originator and the MBS/Trust creates a broken chain of title, and if the chain of title is broken, the contract becomes null and void. ...

74.  As previously stated, when a Servicer or Trustee like Shellie Wallace is foreclosing, an additional break in the chain occurs as the Trustee is often never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.  The "Trust" can never hold or transfer a Mortgage in the property on behalf of the investors.  The IRS tax-code forbids Trustees or Services [*sic*] from holding any underlying assets in the trust.

75.  In many of the cases, the originator is no longer in business and/or has been dissolved in bankruptcy.  The MBS/Trustee never mentions the intervening transfers to the other parties or the shareholder/investors or to the Court.  The MBS/Trustee never proves that such transfers lawfully occurred.

76.  In the rush to create these trusts and sell shares to investors as fast and in as large a quantity as possible, the loans, Mortgages and Assignments were never prepared, filed or recorded.  This mean that the entity seeking to foreclose can NEVER prove the chain of ownership.

. . .

78. MBS/Trustees and their lawyers discovered in the foreclosure process that the Note and Mortgage Assignments would never be located **because they never existed**. They also discovered that states did not allow blank Assignments or Assignments with retroactive effective dates. To solve the problem of the missing and non-existent Assignments, the MBS/Trustees, their attorneys and their Servicing Agents, decided to fabricate Assignments from thin air and then quietly record the fabricated Assignments. ...

. . .

83. If MERS is not the title holder of properties held in its name, the chain of title was been [*sic*] broken, and *no one* has standing to sue or foreclose (MERS . Nebraska Department of Banking and Finance *S-04-786. No.–October 21, 2005*.) Any Substitute or Successor Trustee who attempts to sell a property he doesn't have the right to foreclose on is committing fraud.

. . .

95. In lieu of valid Promissory Notes, Mortgages and Mortgage Assignments, MBS/Trusts relied and continue to rely on these fabricated documents produced and executed by their own law firms and third-party default service companies.

. . .

99. Defendants have filed foreclosure knowing that they were NOT the "owners" or beneficiaries of the loan they filed foreclosure upon. They knowingly and intentionally set out to deceive the homeowners and Courts as to this fact and had full knowledge of the fact that they lacked Constitutionally defined "Standing" and capacity to foreclose.

100. The Defendants and MERS have drafted, executed and filed, or caused to be filed, false and fabricated Promissory Notes, Mortgages, and Assignments of Mortgages, prepared by employees of the foreclosure law firm, in order to fraudulently foreclose upon the Plaintiff's property.

. . .

112. It is asserted that the Law Firm initiating this foreclosure action and the Defendants, have conspired with each other and their other agents and principals to file a false and fraudulent Foreclosure Action and to later create a false and forged Mortgage Assignment.

. . .

125. The entities that have foreclosed or will attempt to give notice that they will foreclose on th homeowner are not the parties that funded the loan of the borrowers. They are Pretender-Lenders.

. . .

127. By engaging in a pattern of racketeering activity, specifically "mail or wire fraud," the Defendants subject to this Court participated in a criminal enterprise affecting interstate commerce.

128. A separate count of Mail Fraud took place each and every time a fraudulent pleading, Affidavit, Promissory Note Assignment, mortgage or mortgage assignment was sent by a Defendant through the use of the US mail. Likewise is true for any documents sent via electronic mail as would be the case as part of a Federal action electronically filed with the Court. Such would constitute a separate act of wire fraud.

129. By sending the fraudulent affidavits, assignments and pleadings to the clerks of court, and Plaintiff in this foreclosure case. [*sic*] These Defendants intentionally participated in a scheme to defraud others, including the Plaintiff. They utilized the U.S. Mail and the internet to do so.

130. The criminal enterprise affects interstate commerce in numerous ways. It is used to conceal the true ownership of mortgage loans from the general public, including investors, borrowers, the SEC, the IRS, and the Courts.

. . .

134. The "predicate acts" of fraud, which were accomplished through the U.S. Mail, and the internet, and which are specifically attributable to the Defendants subject to this Count, are:
a.) Administering foreclosure on behalf of entities which were not the real parties in interest, and which had no standing to sue. This

involved, and involves, the use of the MERS artifice.

b.) Actively concealing the Defendants' lack of standing in their standard affidavits of foreclosure.

c.) The drafting, and processing of the fraudulent affidavits and documents and the subsequent execution of the documents the robo-signers and employees Defendant Law Firm, and the filing of fraudulent and forged affidavits as to loan ownership by robo-signers and employees of the Defendant Law Firms, servicers, and Processing companies.

135.  By persons working for the foreclosing entity with no knowledge whatsoever of the truth of their contents.

136.  These predicate acts are related.  They share the common purpose of defrauding the Plaintiff and other homeowners.  They share the common themes of "non-documentation" and concealment of the real parties in interest.

137.  The predicate acts satisfy the RICO continuity requirement: they extend from in or [*sic*]

138.  Beginning in 1998 and continuing unabated, the scheme meets the definition "open-ended" continuity.  The threat of continued criminal activity as part of this enterprise in [*sic*], without question, still looming over the American economy.  Alternatively, closed-ended continuity is present because the scheme occurred over a period in excess of ten years.

139.  As the result of the RICO enterprise of which these actions were part, the Plaintiff is being defrauded and his home as actually been put up for sale in an illegal foreclosure.  The measure of the damages for the Plaintiff is based on how much he stands to lose or would have lost if this fraud were successful based on forged Loan Documents.  Since any real parties in interest have already been paid, the mortgages were truly not subject to being foreclosed upon, and the fair market value of the properties at the time of foreclosure is for this reason the measure of the damages to the Plaintiff. . . .

140.  The Plaintiff is entitled to judgment in the amount of three times their actual damages, which should be arrived in the manner indicated in the preceding paragraph. [*sic*] plus costs and a reasonable attorneys' fee under 18 U.S.C. § 1964[c].

. . .

147.  The Defendants have conspired together to violate 18 U.S.C. §1962[d], by committing fraud and utilizing the US Mail.  The Defendants agreed upon the same criminal objective to wit: the theft of real property through illegal foreclosures.  Each conspirator is reasonable [*sic*] for the actions of the others and the results of the conspiracy as a whole.

. . .

154.  Conspirators, including the Defendants, have accomplished their illegal objectives as detailed throughout this Complaint the evidence of which has also been recorded at the Wilson County Clerks office for the illegal foreclosure sale.

. . .

172. ... Among the shareholders of MERS, according to the site, are the following institutions: Bank of America, Chase, CitiMortgage, Inc., Fannie Mae, Freddie Mac, HSBC, SunTrust, and Wells Fargo.  These are many of the same institutions the law firm in this action represents.  This is no coincidence, as these entities are co-conspirators in the MERS scheme herein described.

. . .

175.  The preparation and filing of MERS mortgages and assignments, and prosecution of the complaints to Foreclose on the MERS Mortgages on these properties were each predicate acts in the pattern of racketeering activity complained of herein, and were actions taken in furtherance of the MERS enterprise.  The actions could not have been brought by the Defendant Law Firm without the MERS artifice and the ability to generate any necessary "assignment" which flowed from it. ...

. . .

178.  The Defendants have filed forged, groundless, materially misstated or false claims against the Plaintiff's property in the way of illegal Assignments of Mortgages.  The individuals responsible for the violations, can be ascertained from the public record for criminal prosecution.  Restitution to the Plaintiff is warranted.

179.  All parties taking part in or who conspired with those who participated in the acts or practices in question are jointly and severally liable to the Plaintiff.

. . .

184. ... The Defendants knew the foreclosures affidavits were filed with false statements as to the Defendants' standing and status as Mortgagee.

. . .

186.  Base on this Petition in Equity, the property owner is entitled to have clear title restored and the Honorable Court should release the mortgage and strike mortgage assignments filed in the name of the Defendants.

187.  The Defendants have knowingly and maliciously communicated, in writing, a false statement which has the effect of disparaging the plaintiff's title to property.

. . .

192.  As alleged herein, any purported transfer or any interest in the Plaintiff's real estate was wrongful and invalid because the mortgage, foreclosure or purported foreclosure was invalid and was not conducted in accordance with the laws of Tennessee. ...

193.  The recording of the mortgage published the information to third parties.

194.  As a result of said wrongful publication of an ownership interest in the Plaintiff's property, Plaintiff has incurred damages in excess of the amount of the individual publicly recorded mortgage and will continue to incur fees and costs related to this suit, in an amount to be proved at trial.

. . .

197.  Defendants have filed mortgages, threatened foreclosure and are now selling the Plaintiff's house at a public auction, for which Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive Plaintiff of their home and further have failed to notify the Plaintiff

of the discharge of his obligations on the notes associated with his mortgage.

198. Plaintiff seeks a declaratory judgment against Defendants stating that Defendants have violated Plaintiff's rights and that the Defendants had and have no right to hold mortgages in the name of MERS and/or foreclose on the Plaintiff's property and that the Defendants are entitled to no further payments from the Plaintiff or recognition in Plaintiff's Title to their property.

199. Plaintiff has been intentionally misled about the terms and conditions of the agreements entered into with the Defendants, MERS and all other yet to be named lenders, who originated loans or who have attempted to foreclose on the Plaintiff.

200. The Plaintiff is entitled to a reformation of these agreements and note as an unsecured not or as partially or wholly a discharged note and a right to reformation of the contracts with the persons or entities who are owed obligations because of funding of the loans of the Plaintiff.

201. The Plaintiff is entitled to have his property as referred to herein quieted in his names until and unless some party comes forward during this litigation who has a right to enforce the loans upon the house free and clear of all encumbrances.

. . .

204. The Defendants have not loaned any money to the Plaintiff.

205. The Defendants have no contractual relationship with the Plaintiff.

206. The Defendants are not the holders in due course of the promissory notes on the Plaintiff's property.

. . .

210. ... [T]he parties in question are jointly and severally liable for their acts of fraud by their misrepresentation and all damages stemming from such, including punitive damages and court fees.

222. ... As a result of MERS being named the beneficiary, and through the processes described herein, the Note and deed of trust

are "SPLIT." When the Note is split from the deed of trust, then the Note becomes unsecured and a person holding only the Note lacks the power to foreclose and a person holding only a deed of trust suffers no default because only the holder of the Note is entitled to payment on it. ...

223. All Defendants named herein as co-conspirators profited from their respective roles in originating loans, selling them, and pooling their MERS registered hone loans together in large bundles which were sold and turned into financial derivative instruments.

. . .

225. The Defendant described herein as Trustee have and will attempt to unlawfully foreclose on the homeowner property. The Servicers or trustees will misrepresent the legal right to foreclose, when, in fact, they have no right to foreclose. The wrongful foreclosure will illegally deprive the Plaintiff of the legal title to his home if allowed to proceed; [*sic*]

. . .

229. Upon information and belief, Plaintiff's loan was securitized, "sliced and diced" and pooled into mortgage pools such as the ones described herein as part of the conspiracy related to the creation and operation of the MERS system, and Defendants, and each of them, profited from same and are liable for their acts and the acts of their co-conspirators in creating the MERS system, including, but not limited to, the use of MERS-approved and created documents to establish the loans (including but not limited to, the form of deed of trust), and in participating in the securitization process described herein, thus, involving the Plaintiffs in this fraud upon the investors without their knowledge.

. . .

231. As a result of Defendant conspirators' conspiracy described herein, Plaintiff has suffered injuries which include mental anguish, emotional distress, embarrassment, humiliation, loss of reputation and a decreased Credit Rating which has, or will, impair Plaintiff's ability to obtain Credit at a more favorable rate than before the decrease in Credit Rating, the loss or anticipated loss of their Residence and other financial losses the Plaintiffs is [*sic*]

incurring in this matter.

232.  Defendant conspirators' actions were wanton, willful and reckless, and justify an award of punitive damages against Defendant conspirators, and each of them.

. . .

234.  Upon information and belief, Defendants and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in and benefit from wrongful foreclosures perpetrated on Plaintiffs as alleged herein.

. . .

240.  Actively concealing the Trustee's lack of standing in their standard complaints for foreclosure, usually entitled, "Complaint to Foreclose Mortgage and to Enforce Lost Loan Documents." ...

. . .

245.  Plaintiff is entitled to judgment in the amount of three times their actual damages, plus court costs under 18 U.S.C. §1964[c].

. . .

247.  Defendants' deceptive scheme as alleged herein will unjustly enrich Defendants, and each of them, to the detriment of Plaintiff, by causing Defendants, and each of them, to receive monetary payments from the mortgage payments, and/or the sale of Plaintiff's properties through illegal foreclosures.  The Defendants were not entitled to the mortgage payments or proceeds of a foreclosure.  The Defendants did not fund the loans of the Plaintiff.

248.  The Plaintiff will suffer irreparable injury unless the foreclosure sale is restrained and enjoined, and will lose his cash and personal investment in the home and right to peaceful enjoyment with his wife and two children their home [*sic*]. Plaintiff is a Country music producer and artist and has converted his home into a recording studio which is his workplace since he is self-employed.  Loss of his home by the illegal foreclosure would create great financial hardship for the Plaintiff, since he depends on the work he creates from the home studio for a livelihood.

Additionally, the Plaintiff will lose the right to sell or mortgage the property at some future date and will not obtain full benefit of the appreciated value.

. . .

255.  Defendant Law Firm made contact with the Plaintiff and identified themselves as a "Debt Collector" for lender.  Plaintiff disputed the amount that he allegedly owed and asked the Defendant Law Firm to validate the debt, which they refused to do because they don't believe Federal Law applies to them.

256.  Federal law stipulates that a debt be verified as required by FDCPA pursuant to 15 USC § 1692g.  The following required documentation is what constitutes legal validation of a debt under Federal law:

> - Complete payment history, the requirement of which has been established via Spears v Brennan 745 N.E.2d 862; 2001 Ind. App. LEXIS 509 **and** Original Agreement (Wet-ink Note) that bears the signature of the alleged debtor wherein he agreed to pay the Original creditor.

> - Letter of assignment from the Original creditor to the debt collector. (Agreement with debt collector's client (the Principal) that grants them the authority to collect on this debt.)  Coppola v. Arrow Financial Services, 302CV577, 202 WL 32173704 (D. Conn., Oct. 29, 2002) Who is the Principal? Who owns the Note?

257.  Furthermore, under FDCPA Section 809(b), a debt collector is not allowed to pursue collection activity until the debt is FULLY validated.  This would mean that the foreclosure sale would have to be suspended until the debt is validated.

258.  The debt collector was asked by Plaintiff to validate the debt the same day they identified themselves as a debt collector but refused to adhere to Federal law.

259.  Verification of the alleged debt is crucial because the True, Real and Actual Beneficiary of the Note must be correctly identified in order to get paid.  The rationale is to protect the obligor from being subject to multiple demands for payment on a single Note.

261.  Upon information and belief, the Defendants, did not and cannot legally obtain foreclosures and/or file an Assignment of the Notes or Mortgages of the Plaintiff. Neither the Defendants nor MERS have capacity or standing to file suit or foreclose on property.  (U.S. Bank N.A. v. Ibanez and Wells Fargo Bank NA v. LaRace et al, Supreme Judicial Court of Massachusetts, No. SJC-10694.)  The lower-court cases are U.S. Bank National Association v. Ibanez, 08-Misc-384283, and Wells Fargo Bank NA v. LaRace, 08-Misc-386755, Commonwealth of Massachusetts, Trial Court, Land Court Department.  In conspiracy with each other, the Defendants, filed fraudulent mortgages, affidavits, and mortgage assignments, filed sham foreclosure documents and committed and continue to commit fraud on the recording clerks and the Courts.

262.  These violations as aforementioned entitle the Plaintiff to recover the actual damages they have sustained as a result of the improper filing of foreclosure affidavits and the improper filing of the Mortgage Assignments; statutory damages as permitted by law; restitution under [*sic*] for the violations of the criminal acts, treble damages as allowed by the acts, punitive damages, and cost and attorneys fees incurred. The Plaintiff is entitled to equitable relief as to the clearing and Quieting of the Title to his property in relation to the filing of false Note and Mortgage Assignments.

263.  The facts presented in the Complaint show that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed," as established in Landmark v. Kesler, Kansas decision as to lack of authority of MERS; laSalle Bank v. Lamy, a New York case; and In Re Foreclosure Cases, the "Boyko" decision from Ohio Federal Court.

264.  Because the Successor Trustee attempting to foreclose on the property, has failed to produce documentation to prove that the loan got into the Trust, (i.e. Receipts and Certifications) that will verify this loan is listed as an asset in that Trust, she has failed to prove that the Trust she is Trustee over is legitimate and has standing to foreclose. If the loan NEVER made it in to the Trust, how can a Trustee enforce that which does not exist in the Trust?

265.  Because ALL of the Defendants including the debt collector have failed to present any evidence or proof to the Plaintiff upon

request in writing for verification of possession of the Note, for the disputed debt, none of them is a holder in due course. (Norwood v. Chase Home Finance LLC, 1:09-cv-00940-JRN, W.D. Tex, Jan 19, 2011).

. . .

267. The purpose of a temporary restraining order is to preserve the status quo - the last peaceable, non-contested status that preceded the controversy. The issuance of the restraining order will preserve the status quo in this matter. Furthermore, Plaintiff will suffer immediate irreparable injury if Defendants are allowed to continue with the foreclosure sale of Plaintiff's homestead.

Plaintiff respectfully requests that this Honorable Court a temporary restraining order be issued [*sic*] without notice to the Defendants, restraining the defendants, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property on March 30, 2011, under the power of sale contained in the deed of trust.

(i) The Plaintiff will suffer irreparable injury unless the foreclosure sale is restrained and enjoined, and will lose his case and personal investment in the home and right to peaceful enjoyment of with his wife and two children their home [*sic*].

(ii) Plaintiff is a Country music producer and artist and has converted his home into a recording studio which is his workplace since he is self-employed.

(iii) Loss of his home by the illegal foreclosure would create great financial hardship for the Plaintiff, since he depends on the work he creates from the home studio for a livelihood.

(iv.) Additionally, the Plaintiff will lose the right to sell or mortgage the property at some future date and will not obtain full benefit of the appreciated value.

(v) The Plaintiff will also be unable to comply with his contractual obligations requiring him to compose, arrange, produce and record music from his studio for clients.

(a) In addition to injuries that cannot be remedied by any award or damages, the Plaintiff will be unable to take actions to protect the

interests of his clients who use his expertise and equipment and will be in danger of being under breach of contract and breach of trust for not delivering the finished product to the clients he is currently producing. The home also hold [*sic*] sentimental value to the Plaintiff.

(b) There is no remedy at law that is clear and adequate to protect the Plaintiff's property interest against this wrongful foreclosure by the Defendants. The Plaintiff respectfully requests injunctive relief so that justice may be done, not merely for delay. The issuance of the restraining order will preserve the status quo in this matter - the last peaceable, non-contested status that preceded the controversy.

268. The Plaintiff prays that at the hearing the Honorable Court require the Substitute Trustee and the Defendants to present the following documents to the Court:

(i) The Original Blue-ink Note and the Title for inspection by Plaintiff and the Court.

(ii) Certification (**C-1**) from the Trust that the Note was conveyed and delivered to the Trust and they received all the ORIGINAL instruments that verify this loan is listed as an asset in that Trust over which Successor Trustee Shellie Wallace manages.

(iii) Certification BY the Trust that they received what they were supposed to receive, and the documents complied with the requirements of the Trust. (Certificate **C-2**)

(iv) Copies of **Form-1066** that are required to be filed annually with the **IRS** to prove that the **Trust** is still functional. (For Tax Yrs, **2008, 2009,** and **2010**). Please avail these forms.

(iv) [*sic*] An agreement between the Trust and Substitute Trustee that acknowledges a Trust was indeed set up and that the Trust meets all the obligations for the physical delivery of the instruments and appoints Shellie Wallace as the Substitute Trustee for the Trust.

(v) The Original contract between the Substitute Trustee attempting to foreclose and the Principal (Owner of the Note) that grants the Substitute Trustee the right to act on their behalf, including administering foreclosure. This is part of the Debt

Verification requirement of the FDCPA pursuant to 15 USC § 1692g (Coppola v. Arrow Financial Services, 302CV577, 2002 WL 32173704 (D. Conn., Oct. 29, 2002)(v)

(vi) The Original Transfer of assignment of the Deed of Trust from MERS to CitiMortgages, not a doctored-up or Photoshopped document.

(vii) An explanation as to how such a transfer of assignment of the Deed of Trust to CitiMortgage could be possible yet MERS is a mere "Nominee" and did not own the Note. MERS itself has given sworn testimony UNDER OATH that it does not have the authority to transfer the Note or Deed of Trust to another in MERS v. Nebraska Department of Banking. ...

The purpose of these documents is to establish who the real owner of the Note is and who has standing to foreclose. **Virtually any company can show up, claim to own the Note, and proceed to foreclose.** We need proof that the Trustee and Trust are legit.

. . .

271. Plaintiff respectfully requests that this Honorable Court enter an Order immediately restraining the Defendants and any of their agents, assigns, or beneficiaries, from the following:

**[a]** A temporary restraining order to be issued without notice to the Defendants, restraining the defendants, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property on March 30, 2011, under the power of sale contained in the deed of trust.

**[b]** The Defendants be cited to appear and show cause, and that on hearing, a temporary injunction be issued enjoining Defendants, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property under the power of sale contained in the deed of trust.

**[c]** The Court cite the Successor Trustee attempting to foreclose on the property, to produce documentation to prove that the loan got into the Trust, (i.e. Receipts and Certifications) that will verify this loan is listed as an asset in that Trust.

**[d]** The Defendant Law Firm be required to validate the disputed

debt before collecting on it or foreclosing, as required by Federal law. (FDCPA pursuant to 15 USC § 1962g.)

272. For the reasons described above, Plaintiff also requests that the Court grant him a Preliminary Injunction and Permanent Injunction to stop the foreclosure.

273. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, as required by law, and that Plaintiff have the following relief:

**(a)** A Temporary Restraining Order, Preliminary Injunction and Permanent Injunction be issued without notice to the Defendants, restraining the defendants, their agents, servants, and employees, or representatives from directly or indirectly selling, attempting to sell, or causing to be sold the Plaintiff's property, and an additional Order which punishes severely and sanctions any violation of said Order by any of the Defendants or their representatives.

**(b)** Costs, attorneys' fees, and such additional relief as the Court may deem just and proper that the Plaintiff is entitled to and punitive damages as may be necessary and appropriate to punish the past and present and deter future reprehensible misconduct.

**(c)** Equitable relief as to the clearing and quieting of the title to the Plaintiff's property in relation to the filing of false foreclosure documents and lack of standing.

**(d)** Declaratory Judgment that MERS, CitiMortgage or their agents, servants, employees, or representatives lack the authority and standing to foreclose on the Plaintiff's mortgage.

Docket No. 1 (footnote added; headings omitted; all capitalization and emphasis original).

### III. Analysis

### A. Standard of Review: Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a

claim

upon which relief can be granted. In order to state a claim upon which relief can be granted, a

complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B.  The Case At Bar**

As has been discussed above, the heart of Plaintiff's action is that he believes that Defendants are wrongfully foreclosing on his property.  Despite filing a Complaint that consists of 272 separate paragraphs of allegations against Defendants (the paragraphs relating to the instant Defendants being included herein, *supra*), only 10 of those paragraphs contain actual facts applicable to the instant Defendants.

Those facts are:

> 2.  Jimmy Collins was and is still a resident at 2137 ERIN LANE, MT. JULIET TENNESSEE in Wilson County. ... [T]he Plaintiff defaulted on his loan after consistently making payments since July 2008, the time he acquired the loan from Mortgage Investors Group.  The loan was then accelerated and Plaintiff was told by the Trustee Shelly Wallace, that he either had to satisfy it by paying the entire $186,843.42 or his home would be sold at a public auction on March 30, 2011, at the Wilson County Courthouse in Lebanon, Tennessee.

> . . .

> 15.  Wilson and Associates PLLC, is a law firm with its principal place of business in the state of Arkansas, and the firm is ... the regional corporate counsel for CitiMortgage.

> 16.  Shellie Wallace, is a Successor Trustee for MERS.

> . . .

> 172. ... Among the shareholders of MERS, according to the site, are the following institutions: Bank of America, Chase, CitiMortgage, Inc., Fannie Mae, Freddie Mac, HSBC, SunTrust, and Wells Fargo.  These are many of the same institutions the law firm in this action represents. ...

> . . .

204.  The Defendants have not loaned any money to the Plaintiff.

205.  The Defendants have no contractual relationship with the Plaintiff.

. . .

255.  Defendant Law Firm made contact with the Plaintiff and identified themselves as a "Debt Collector" for lender.  Plaintiff disputed the amount that he allegedly owed and asked the Defendant Law Firm to validate the debt, which they refused to do ...

. . .

258.  The debt collector was asked by Plaintiff to validate the debt the same day they identified themselves as a debt collector...

. . .

267. ... (ii) Plaintiff is a Country music producer and artist and has converted his home into a recording studio which is his workplace since he is self-employed.

(iii) Loss of his home by the illegal foreclosure would create great financial hardship for the Plaintiff, since he depends on the work he creates from the home studio for a livelihood.

Docket No. 1.

These 10 facts simply establish that the instant Defendants neither lent Plaintiff any money, nor had a contractual relationship with Plaintiff; that the instant Defendants identified themselves to Plaintiff as "Debt Collector[s]" for the lender and notified Plaintiff that he had to pay the balance of his mortgage loan off or his home would be put up for auction; that Plaintiff asked the instant Defendants to validate the debt, but they did not do so; and that Plaintiff would suffer financial hardship if his home were foreclosed upon, as he worked from his home recording studio.

As quoted above, the *Iqbal* Court has stated, "Threadbare recitals of the elements of the

cause of action, supported by mere conclusory statements, do not suffice."  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." 129 S.Ct. at 1949-1950 (citations omitted).

Taking the aforequoted10 facts as true, they nevertheless fail to state any claim upon which relief can be granted against Defendants Wilson & Associates, PLLC and Shellie Wallace.  Because Plaintiff has failed to allege facts sufficient to state any claim upon which relief can be granted, Defendants Wilson & Associates, PLLC and Shellie Wallace's Motion to Dismiss should be granted.

## IV.  Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

É. CLIFTON KNOWLES
United States Magistrate Judge