IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


JIMMY L. COLLINS, JR.,                )
                                      )
          Plaintiff,                  )          Case No. 3:11-cv-00264
                                      )          Judge Sharp / Knowles
v.                                    )
                                      )
MORTGAGE ELECTRONIC                   )
REGISTRATION SYSTEMS, INC., et al.,   )
                                      )
          Defendants.                 )


## REPORT AND RECOMMENDATION

### I.  Introduction and Background

Pending before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed

by Defendants Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc. (collectively

"MERS"), and CitiMortgage, Inc. ("CMI").[1]  Docket No. 70.  Defendants' submission is a

combination Motion and supporting Memorandum of Law.  *Id.*

Plaintiff has not filed a Response to the instant Motion to Dismiss.

Plaintiff filed this pro se action alleging the following violations: 18 U.S.C. §1962(c) and

(d) (civil RICO), "conspiracy," T.C.A. §32-14-114 (criminal forgery), common law fraud,

---

[1] Paragraph 11 of the instant Motion states: "CMI and MERS join in the Wilson
Defendants' Motion to Dismiss (Docket No. 30)."  The undersigned has previously submitted a
Report and Recommendation recommending that Plaintiff's claims against Defendants Wilson
and Associates, PLLC and Shellie Wallace be dismissed.  *See* Docket No. 86.  The undersigned
notes that the allegations of Plaintiff's Complaint pertaining to the Wilson Defendants were
sparse, whereas the allegations of Plaintiff's Complaint pertaining generally to the instant
Defendants are voluminous.  It is therefore prudent to analyze the instant Motion to Dismiss
separately from the already decided Wilson Defendants' Motion to Dismiss.

T.C.A. §39-14-105 (criminal grading of theft offenses), slander of title, quiet title, conspiracy to commit fraud, conspiracy to commit wrongful foreclosure, unjust enrichment, Real Estate Settlement Procedures Act (RESPA), and the "Federal Debt Collection Practices Act" (FDCPA). Docket No. 1. Plaintiff sues Mortgage Electric Registration Systems, Inc., MERSCORP, CitiMortgage, Inc., Wilson and Associates, PLLC, and Shellie Wallace, Trustee.[2] *Id.* Essentially, and at the core of the Complaint, Plaintiff alleges that all Defendants wrongfully instituted foreclosure proceedings on his home. *Id.* Plaintiff seeks declaratory, equitable, and injunctive relief, as well as compensatory and punitive damages, costs, attorneys fees,[3] and such additional relief as the Court may deem just and proper. *Id.*

Defendants argue that Plaintiff's claims should be dismissed because, "The majority of the arguments in Plaintiff's Complaint and Motions are based upon unrelated general allegations of corruption and improper practices in the mortgage industry," and because Plaintiff "has failed to present facts that support any of his claims in this case, and the facts on record are plainly contrary to his assertions." Docket No. 70, p. 5.

With regard to Plaintiff's Civil RICO claim (and his claims of mail or wire fraud as predicate offenses), Defendants argue that Plaintiff cannot prevail because he has failed to describe the time, place, and content of any alleged misrepresentations as required by the heightened pleading standard of Fed. R. Civ. P. 9(b). *Id.*, p. 9-10. Defendants also argue that Plaintiff cannot sustain his general conspiracy claims, conspiracy to commit fraud claims, and

---

[2] As has been noted, the undersigned has previously submitted a Report and Recommendation recommending that Plaintiff's claims against the Wilson Defendants be dismissed. *See* Docket No. 86.

[3] Plaintiff is, however, proceeding pro se.

conspiracy to commit wrongful foreclosure claims, because Plaintiff has failed to demonstrate the existence of an underlying predicate tort, as required to state a cause of action for conspiracy. *Id.*, p. 12, 17. With regard to Plaintiff's claims of fraud (as a separate claim and as the predicate tort for his conspiracy to commit fraud claim), Defendants argue that Plaintiff has failed to comply with Fed. R. Civ. P. 9(b)'s requisite specificity of pleading, and therefore cannot sustain his fraud claims. *Id.*, p. 15. Defendants further maintain that Plaintiff's contention that a conspiracy exists because MERS has transferred an interest in the Deed of Trust while acting as a nominee for Mortgage Investors Group and because CMI was not assigned the Note and Deed of Trust fails because the position of MERS as nominee has been held valid by a number of courts and because the plain language of Plaintiff's deed of trust states that MERS has legal title and may act as nominee for the lender and its successors and assigns. *Id.*, p. 12-13. Likewise, with regard to Plaintiff's claims of conspiracy to commit wrongful foreclosure, Defendants argue that Plaintiff has failed to demonstrate the underlying act of wrongful foreclosure, because Plaintiff's allegation of wrongful foreclosure stems from his contention that the naming of MERS as nominee for the lender is unlawful, but as has been discussed, a number of courts have held that MERS may act as a nominee for a lender. *Id.*, p. 17.

Defendants contend that Plaintiff cannot sustain his claims pursuant to Tenn. Code Ann. §§ 39-14-114 and 39-14-105, because those statutes involve offenses under Tennessee criminal law, and Plaintiff has failed to plead that there is any private right of action in them for Defendants' alleged violations. *Id.*, p. 14.

Defendants argue that Plaintiff cannot establish his slander of title claim because he has offered nothing more than a legal conclusion that Defendants acted improperly against his

3

property, and because Plaintiff has failed to show any facts demonstrating that Defendants maliciously claimed title to his property. *Id*., p. 16. Defendants also argue that Plaintiff's claim to quiet title must be dismissed because it is based on the theory that neither MERS nor CMI ever had any true interest in the property, and because the Deed of Trust, Assignment of Deed of Trust, and Note all demonstrate that that theory has no factual support. *Id.*

Defendants additionally argue that Plaintiff's unjust enrichment claim must fail because Plaintiff has failed to plead that equity demands restitution, and because it is unclear how Defendants have been unjustly enriched, when Plaintiff has retained possession of the property that is the subject of this lawsuit, there has been no foreclosure sale to net Defendants any proceeds, Defendants have been deprived of the loan payments, and Plaintiff has leased the property to a third party. *Id.*, p. 18-19.

With regard to Plaintiff's RESPA claims, Defendants argue that those claims must fail because Plaintiff has failed to allege that either MERS or CMI gave or accepted any kind of fee. *Id.,* p. 19. Defendants further contend that the RESPA provisions at issue apply to the "lender" or "loan originator," which is Mortgage Investors Group, which is not a party to this lawsuit. *Id.* Also, with respect to Plaintiff's FDCPA claims, Defendants maintain that those claims must fail because Defendants are creditors, to which the FDCPA does not apply, as the FDCPA generally applies to debt collectors (not creditors).[4] *Id.*, p. 20. Defendants additionally maintain that Plaintiff's FDCPA claims fail because non-judicial foreclosure is not "debt collection activity"

---

[4] Defendants acknowledge the exceptions that the FDCPA can apply to creditors when the creditor attempts to collect the debt under an assumed name and when the creditor was assigned the debt after default for the specific purpose of collection, but argue that neither exception is applicable to the case at bar. *Id.*, p. 20.

4

under the FDCPA.  *Id.*, p. 21.

Finally, with regard to the lis pendens that Plaintiff recorded on March 24, 2011 against the property that is the subject of this lawsuit, Defendants argue that dismissal of Plaintiff's action terminates the lien lis pendens.  *Id.*, p. 22.  Should Plaintiff's action be dismissed, Defendants seek an Order terminating the lien lis pendens with direction that the Order be filed with the Register of Deeds in which the lien lis pendens was originally filed.  *Id.*

As mentioned, Plaintiff has not responded to the instant Motion.

For the reasons discussed below, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

## II.  Allegations of Plaintiff's Complaint Pertaining to the Instant Defendants

Plaintiff has filed a 73 page Complaint containing 272 separately numbered paragraphs of

"factual" allegations, the majority of which are general allegations of corruption and improper practices in the mortgage industry.  *See* Docket No. 1.  Accordingly, the undersigned will discuss only those "facts" relevant to Plaintiff's specific claims against the instant Defendants.

As primary support for his allegations against the instant Defendants, Plaintiff states:

> On October 10, 2010, the national press began reporting that one of the Defendants, CitiMortgage, had placed a moratorium across the country on foreclosures, based on the illegalities in the policies, practices and procedures of their own employees and the law firms representing their interests in foreclosures.  Additionally, and as to the claims of the Plaintiff to this Complaint, the legality of MERS on Deeds of Trust is being litigated in *In Re MERS Litigation*, MDL2119, United States District Court Arizona.

Docket No. 1, p. 3

## III.  Analysis

5

## A. Standard of Review:  Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a

claim

upon which relief can be granted.  In order to state a claim upon which relief can be granted, a

complaint must contain either direct or inferential allegations respecting all material elements to

sustain a recovery under some viable legal theory.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.

2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not

suffice.  *Id.*  A complaint containing a statement of facts that merely creates a suspicion of a

legally cognizable right of action is insufficient.  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955,

1965 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the

speculative level"; they must "state a claim to relief that is plausible on its face."  *Id*. At 1965,

1974.  *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th

Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate

standard that must be applied in considering a Motion to Dismiss for failure to state a claim.  *See*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009).  The *Iqbal* Court stated in part as

follows:

> Two working principles underlie our decision in *Twombly*.  First,
> the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of the cause of action,
> supported by mere conclusory statements, do not suffice . . . . Rule
> 8 marks a notable and generous departure from the hyper-
> technical, code-pleading regime of a prior error, but it does not
> unlock the doors of discovery for plaintiff armed with nothing
> more than conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss . . . .

6

> Determining whether a complaint states a plausible claim for relief
> will, as the Court of Appeals observed, be a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense. . . . But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged - but it has not "show[n]" -
> "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

## B. The Case At Bar

As an initial matter, Plaintiff includes two criminal statues in his grounds for suit: T.C.A.

§32-14-114 (criminal forgery) and T.C.A. §39-14-105 (criminal grading of theft offenses). *See*

Docket No. 1. This is a civil action, and Plaintiff has failed to plead that either criminal statute

provides any private right of action. Absent a private right of action, Plaintiff cannot recover

civilly for these criminal statutes, and Plaintiff's criminal forgery and criminal grading of theft

offenses claims should be dismissed.

Plaintiff's unjust enrichment claim is admittedly based upon Defendants *intention* "to

acquire monies from the sale of the property." *Id.*, p. 27-28, 62-63 (emphasis added). Plaintiff

does not allege that Defendants have, in any way, financially benefitted thus far. Plaintiff's

home has not yet been the subject of a foreclosure sale. In fact, Plaintiff has leased the subject

property to a third party. Because Plaintiff's own allegations demonstrate that Defendants have

thus far not been enriched in any way, his unjust enrichment claim must fail. Accordingly, this

claim should be dismissed.

With regard to Plaintiff's Civil RICO, conspiracy, fraud, conspiracy to commit fraud, and

conspiracy to commit wrongful foreclosure claims, Plaintiff alleges:

> The "predicate acts" of fraud, which were accomplished through
> the U.S. Mail, and the internet, and which are specifically

7

attributable to the Defendants subject to this Count, are:
**a.)** Administering foreclosure on behalf of entities which were not the real parties in interest, and which had no standing to sue. This involved, and involves, the use of the MERS artifice.
**b.)** Actively concealing the Defendants' lack of standing in their standard affidavits for foreclosure.
**c.)** The drafting, and processing of the fraudulent affidavits and documents and the subsequent execution of the documents the robo-signers and employees [of the] Defendant Law Firm, and the filing of fraudulent and forged affidavits as to loan ownership by robo-signers and employees of the Defendant Law Firm, servicers and Processing companies.

*Id.*, p. 37-38 (bold in original).

Plaintiff also alleges:

[Merscorp, Inc.'s] overt acts include the following: **(a.)** Creation of the MERS artifice; **(b.)** Planning, designing, and enacting the MERS criminal enterprise of which Plaintiff complains herein; **(c.)** Arranging for the use of the MERS as "mortgagee" in the standard mortgages at issue; **(d.)** Drafting of the standard MERS language to be included in such mortgages; **(e.)** Entering into one of more "agreements for signing authority" which purported to allow employees of the other conspirators to execute assignments in which the "assignor" and "assignee" are strawmen actually not possessed of the capacity stated, and of which the person executing the document has no knowledge; **(f.)** Creation and maintenance of an acceptable public image for MERS; **(g.)** Owning and maintaining the registration and licensure of the MERS entity, Mortgage Electronic Registration Systems, Inc, with the necessary state agencies, plus other ministerial acts designed to maintain the corporate shield and to mimic the actions expected of normal corporations so as to fraudulently disguise its true nature, and; **(h.)** Facilitating the use of the MERS artifice by other participants in the conspirators' scheme.

*Id.*, p. 39-40 (bold in original).

Plaintiff states:

**137.** The predicate acts satisfy the RICO continuity requirement: they extend from in or [*sic*]
**138.** Beginning in 1998 and continuing unabated, the scheme

8

meets the definition of "open-ended" continuity.  The threat of
continued criminal activity as part of this enterprise in, without
question, still looming over the American economy.  Alternatively,
closed-ended continuity is present because the scheme occurred
over a period in excess of ten years.

*Id.*, p. 38 (bold in original).  *See also*, *id.*, p. 40, para. 144.

Civil RICO claims and conspiracy claims require the establishment of an underlying

predicate offense, which Plaintiff in the case at bar asserts to be mail or wire fraud.  Claims of

fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  Specifically, Fed.

R. Civ. P. 9(b) requires the pleader to state the circumstances constituting fraud with

particularity.  As can be seen by the quoted passages above, Plaintiff has failed to do so.

Plaintiff's averments are general and conclusory.  Accordingly, Plaintiff's claims of fraud should

be dismissed.  Because Plaintiff's fraud claims should be dismissed, Plaintiff cannot establish the

requisite underlying predicate offense necessary to sustain his civil RICO and conspiracy claims,

or his conspiracy to commit fraud claim, and those claims should likewise be dismissed.

With regard to Plaintiff's conspiracy to commit wrongful foreclosure claim, in order to

prevail, Plaintiff must establish the requisite underlying predicate act of wrongful foreclosure.

To that end, Plaintiff complains essentially that MERS lacks standing to foreclose, and therefore,

that any attempted foreclosure would be wrongful.  Particularly, Plaintiff contends:

**235.** Specifically, the MERS system was designed to remove the
need for recordation of transfers of deeds of trust as alleged herein.
This component of the design of the MERS System facilitated the
wrongful foreclosures complained of herein by making it easier to
transfer.

**236.** The MERS system does not track the transfer of the notes nor
to what entity the notes were transferred.

**237.** The MERS system does not track the identity of the holders

9

of the Note on the Plaintiff's properties.

. . .

**240.** Actively concealing the Trustee's lack of standing in their
standard complaints for foreclosure, usually entitled, "Complaint
to Foreclose Mortgage and to Enforce Lost Loan Documents." It
is believed that in 80% or more of these mortgages held and
foreclosure complaints filed by the Defendants, the original loan
documents do not exist.

**241.** Although MERS is the mortgagee of record, it has never
been the "owner" or "holder" of the Note. Most importantly,
MERS is never the agent of the actual holder in due course or the
owner of the Note. MERS works for the servicing agent, which, as
with MERS, is not the holder in due course or the owner of the
Note. MERS never has a relationship with the owners of the Note.

. . .

**244.** Since the real parties in interest are not parties to the
foreclosures or Mortgagees of record, the mortgages were truly not
subject to being foreclosed upon. MERS admittedly does not hold
any promissory notes because it uses and electronic registration
system. A party must have possession of a promissory note in
order to have standing to enforce and/or otherwise collect a debt
that is owed to another party. Given these facts, MERS does not
having legal standing to enforce or collect on the mortgage loans
that are supposedly secured by mortgages which name MERS as a
"nominee."

*Id*., p. 60-61.

As can be seen, Plaintiff's allegations against MERS are general and conclusory.

Moreover, Plaintiff's contention that the naming of MERS as nominee for the lender is unlawful

does not stand, as numerous courts have held that MERS may, in fact, act as a nominee for a

lender. *See, e.g., In Re: Mortgage Electronic Registration Systems (MERS) Litigation*, 2011

U.S. Dist. LEXIS 7232 (D. Ariz. 2011); *In re Martinez*, 2011 WL 489905 (Bankr. D. Kan.

10

2011); *In re Lopez*, 2011 WL 576820 (Bankr. C. Mass. 2011); *Kiah v. Aurora Loan Svcs., LLC*, 2010 U.S. Dist. LEXIS 121252 (D. Mass 2010).  Because Plaintiff cannot demonstrate the underlying predicate act of wrongful foreclosure, he cannot sustain his conspiracy to commit wrongful foreclosure claim and it should be dismissed.

Plaintiff's slander of title and quiet title claims are similarly based upon the theory discussed above that Defendants lacked any legal interest in the subject property.  *See* Docket No. 1, p. 49-53.  Specifically, Plaintiff avers:

> **187.** The Defendants have knowingly and maliciously communicated, in writing, a false statement which has the effect of disparaging the plaintiff's title to property.
>
> **188.** MERS was illegally and fraudulently listed in the public record as a Mortgagee, having no pecuniary interest in said property and no standing to ever collect upon or enforce a debt connected to the property.
>
> **189.** Plaintiff is the rightful owner of the property known as has stated [*sic*] herein above.
>
> **190.** The Plaintiff is the legal title holder of the property.
>
> **191.** MERS has caused to be recorded against the title of the Plaintiff's property and sent notices of default, filed foreclosure affidavits and documents that claim an interest in the property of the Plaintiff.
>
> **192.** As alleged herein, any purported transfer of any interest in the Plaintiff's real estate was wrongful and invalid because the mortgage, foreclosure or purported foreclosure was invalid and was not conducted in accordance with the laws of Tennessee. MERS knew or should have known that such transfers were wrongful and invalid.  Any publication of an ownership interest in any of the Plaintiff's properties is, therefore false.
>
> **193.** The recording of the mortgage published the information to third parties.

11

. . .

> **201.** The Plaintiff is entitled to have his property as referred to herein quieted in his names until and unless some party comes forward during this litigation who has a right to enforce the loans upon the house free and clear of all encumbrances.

*Id.*

For the reasons discussed above, Plaintiff's allegations that Defendants have no interest in the property at issue or legal standing to foreclose on the same cannot sustain his claims for slander of title or to quiet title, and those claims should be dismissed.

Plaintiff has also raised a claim under RESPA. Docket No. 1. Plaintiff avers that, "[a]t closing, [he] was charged fraudulent closing fees on his HUD-1 Settlement statement." *Id.*, p. 63. Plaintiff also complains that, "[o]n closing, [he] wasn't told that the loan would be sold over and over again as a Mortgage Backed Security through MERS," and that, the "[l]ender failed to adhere to the Truth in Lending Act amendment requiring that when a loan is sold, the new owner of the loan must notify the borrower." *Id.*, p. 64. Plaintiff's RESPA claims are claims against the lender or loan originator (Mortgage Investors Group), which is not one of the instant Defendants. Because this claim does not pertain to one of the instant Defendants, it should be dismissed against them.

Finally, Plaintiff has asserted a FDCPA claim. Docket No. 1. Plaintiff avers that Defendant Law Firm identified itself as a "debt collector" for the lender, but failed to validate Plaintiff's debt when asked to do so. *Id.*, p. 64-65. Defendant Law Firm is not a party to the instant Motion. The FDCPA applies to debt collectors. *See, e.g.,* 15 U.S.C. § 1692a(6); *Montgomery v. Huntington Bank,* 346 F.3d 693, 698 (6th Cir. 2003); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996). The instant Defendants are creditors, not

12

debt collectors. *Compare* 15 U.S.C. § 1692a(4) *with* 15 U.S.C. § 1692a(6). *See also, Lewis v. ACB Bus. Services, Inc.,* 135 F.3 389, 411 (6th Cir. 1998) (an entity whose principal purpose is the extending of credit, not the collection of debts, is not a debt collector subject to the FDCPA). Because the instant Defendants are creditors, and because Plaintiff's allegations are not levied against the instant Defendants, Plaintiff's FDCPA claims should likewise be dismissed against them.

### IV.  Conclusion

For the reasons discussed above, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.  Additionally, because these are the last remaining Defendants in this action, the undersigned recommends that an Order be issued terminating the lien lis pendens placed on the property by Plaintiff on March 24, 2011, with direction that the Order be filed with the Register of Deeds in which the lien lis pendens was originally filed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

13

E. CLIFTON KNOWLES
United States Magistrate Judge